UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Nathan A. Giguere

    v.                                   Civil No. 11-cv-465-JD

William Wrenn, Commissioner,
New Hampshire Department of
Corrections et al.

**REPORT AND RECOMMENDATION**

    Nathan Giguere has filed this action, pursuant to 42 U.S.C. § 1983, alleging violations of his Eighth Amendment rights to adequate medical care and humane conditions of confinement at the New Hampshire State Prison ("NHSP"). Because Giguere is a prisoner, the matter is before the court for preliminary review to determine whether the complaint (doc. nos. 1 and 6)[1] states any claim upon which relief might be granted. See 28 U.S.C. § 1915A(a); United States District Court District of New Hampshire Local Rule ("LR") 4.3(d)(2).

---

[1] Giguere filed an original complaint (doc. no. 1) and subsequently filed a motion to amend the complaint (doc. no. 6), which has been granted. Accordingly, the pleadings (doc. nos. 1 and 6) will be considered, in the aggregate, to be the complaint in this matter.

**Standard of Review**

Under LR 4.3(d)(2), when an incarcerated plaintiff commences an action pro se, the magistrate judge conducts a preliminary review. The magistrate judge may issue a report and recommendation after the initial review, recommending that the complaint be dismissed, if the court lacks subject matter jurisdiction, the defendant is immune from the relief sought, the complaint fails to state a claim upon which relief may be granted, the allegation of poverty is untrue, or the action is frivolous or malicious. See LR 4.3(d)(2) (citing 28 U.S.C. § 1915A and Fed. R. Civ. P. 12(b)(1)). In conducting a preliminary review, the magistrate judge construes pro se pleadings liberally, to avoid inappropriately stringent rules and unnecessary dismissals. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam).

To determine if the complaint states any claim upon which relief could be granted, the court applies a standard analogous to that used in reviewing a motion to dismiss filed under Fed. R. Civ. P. 12(b)(6). The court decides whether the complaint contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. See Ashcroft v. Iqbal, 556 U.S. 662, ___, 129 S. Ct. 1937, 1949 (2009).

To make this determination, the court employs a two-pronged approach. See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011). The court first screens the complaint for statements that "merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action." Id. (citations, internal quotation marks and alterations omitted). The second part of the test requires the court to treat as true all non-conclusory factual allegations, even if "seemingly incredible," and to consider those allegations along with all reasonable inferences drawn therefrom, construed in plaintiff's favor, in determining if the claim is plausible. Id. The plausibility requirement "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of illegal conduct. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007). The "make-or-break standard" is that those allegations and inferences, taken as true, "must state a plausible, not a merely conceivable, case for relief." Sepúlveda-Villarini v. Dep't of Educ., 628 F.3d 25, 29 (1st Cir. 2010); see Twombly, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." (internal citations and footnote omitted)).

Evaluating the plausibility of a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Iqbal, 129 S. Ct. at 1950 (citation omitted).  In doing so, the court may not disregard properly pleaded factual allegations or "attempt to forecast a plaintiff's likelihood of success on the merits."  Ocasio-Hernández, 640 F.3d at 13.  "The relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint."  Id.

**Discussion**

I.   42 U.S.C. § 1983

A government official may be held personally liable under 42 U.S.C. § 1983 if, acting under color of state law, the official caused the deprivation of a federal constitutional or statutory right.  Section 1983 states, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Id.; see also Haywood v. Drown, 556 U.S. 729, ___, 129 S. Ct. 2108, 2111 & n.1 (2009); Harron v. Town of Franklin, 660 F.3d 531, 535 (1st Cir. 2011); Sanchez v. Pereira-Castillo, 590 F.3d 31, 40-41 (1st Cir. 2009) ("Section 1983 requires three elements for liability: deprivation of a right, a causal connection between the actor and the deprivation, and state action."). As Giguere alleges that individuals acting under color of state law have violated his Eighth Amendment rights, his claims arise under § 1983.

## II.   Inadequate Medical Care

### A.   Facts

Giguere alleges that since he has been incarcerated at the NHSP, he has complained to medical personnel, verbally and in writing, of physical symptoms that, he asserts, are indicative of heart disease. Giguere alleges that he has experienced the following symptoms: (1) chest pains; (2) weight loss; (3) rapid heartbeat; (4) loss of skin color; (5) being physically drained; (6) weakness; (7) partial paralysis; (8) ringing in his ears; (9) dizziness; (10) poor circulation; (11) numb and cold extremities; (12) heart palpitation[2]; and (13) unspecified pain.

---

[2] Heart palpitation is "a subjective sensation of an unduly rapid or irregular heart beat." Dorland's Illustrated Medical Dictionary 1386 (Saunders Elsevier publ., 31st ed. 2007).

5

Giguere states that he has reported these symptoms, and the fact that he has a family history of heart disease, to prison medical personnel.

Giguere asserts he made multiple verbal and written requests for medical attention and diagnostic testing, to no avail. Giguere asserts that he sent verbal and written requests and grievances to Dr. Celia Englander, Nurse Practitioner Neculai, and other unnamed nurses, but does not indicate what, if any, response he received. Giguere states that he also made complaints to administrative employee Leo Keating, but did not get a response. Giguere was seen by an unidentified treatment provider at the prison who attributed some of Giguere's symptoms to anxiety.

### B. Legal Analysis

The Eighth Amendment's prohibition of cruel and unusual punishment protects convicted prison inmates from prison officials acting with deliberate indifference to their serious medical needs. See Farmer v. Brennan, 511 U.S. 825, 831 (1994). The Supreme Court has adopted a two-part test for reviewing medical care claims asserted under the Eighth Amendment. See id. at 834.

A court must first determine if the prisoner has alleged facts sufficient to show that he or she has been denied adequate care for a "serious medical need[]." Id. at 835. A serious medical need is one that involves a substantial risk of serious harm to the prisoner if it is not adequately treated, or if treatment is sufficiently delayed. See Leavitt v. Corr. Med. Servs., Inc., 645 F.3d 484, 497 (1st Cir. 2011). "[A] medical need is serious if it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Id. (internal quotations and citation omitted). The serious medical need inquiry is fact-specific and is based on the particular circumstances of a case. See id. at 500.

To assert an Eighth Amendment inadequate medical care claim, the plaintiff must also demonstrate that the defendant or defendants acted with deliberate indifference in failing to provide adequate care to address plaintiff's serious medical need. See Farmer, 511 U.S. at 834. "Deliberate indifference . . . may be shown by the denial of needed care as punishment and by decisions about medical care made recklessly with 'actual knowledge of impending harm, easily preventable.'" Ruiz-Rosa v. Rullan, 485 F.3d 150, 156 (1st Cir. 2007) (quoting Watson v.

7

Caton, 984 F.2d 537, 540 (1st Cir. 1993)). Deliberate indifference may be found "in wanton decisions to deny or delay care, where the action is recklessness, not in the tort law sense but in the appreciably stricter criminal-law sense." Watson, 984 F.2d at 540 (internal citation and quotations omitted). Allegations that simply show "substandard care, malpractice, negligence, inadvertent failure to provide care, and disagreement as to the appropriate course of treatment are all insufficient to prove a constitutional violation." Ruiz-Rosa, 485 F.3d at 156.

Denial of adequate medical care when a plaintiff is at a substantial risk of serious harm, however, does not constitute deliberate indifference unless the defendant was subjectively aware of the risk, and disregarded it. See Leavitt, 645 F.3d at 497. Deliberate indifference requires that "'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Id. (quoting Farmer, 511 U.S. at 837); see also Ruiz-Rosa, 485 F.3d at 156. It is not enough that a prison official should have appreciated a substantial risk to a prisoner's health, the official must, to be deliberately indifferent, have an actual awareness of the risk. See Leavitt, 645 F.3d at 503 ("an official's failure to alleviate a

8

significant risk that he should have perceived but did not, while no cause for commendation, cannot . . . be condemned as the infliction of punishment, let alone punishment cruel and unusual" (internal quotations and citation omitted)).

Here, Giguere alleges that while incarcerated at the NHSP, he experienced a constellation of symptoms that, he believes, indicate the presence of heart disease, including, among other things, chest pains, heart palpitation, and a family history of heart disease. Giguere asserts that the anxiety diagnosis he received from an unidentified individual at the NHSP was dismissive and made in disregard of the severity of his symptoms and the risk associated with failing to treat Giguere's symptoms as indicative of potential heart disease.

Construing the complaint generously, and accepting the properly pleaded facts therein as true, the court can reasonably infer that Giguere's symptoms are objectively sufficiently serious to warrant medical attention. Specifically, Giguere states that he has made prison medical personnel aware of symptoms commonly recognized as potentially indicative of heart problems, which include, among other things, chest pain, partial paralysis, numbness in his extremities, heart palpitation, and weakness. These symptoms, coupled with Giguere's allegedly significant family history of heart disease, constitute

9

sufficient facts from which the court may reasonably infer that Giguere is suffering symptoms indicative of a serious medical condition that, if left undiagnosed or untreated, presents a substantial risk of serious harm to his health.  Accordingly, for purposes of preliminary review, Giguere has sufficiently alleged a serious medical need to satisfy the objective prong of his inadequate medical care claim.

Giguere asserts generally that he has made his symptoms known to, and has requested medical treatment from, prison medical personnel.  Giguere has also generally asserted that he made efforts to obtain treatment but that his concerns were dismissed.  Giguere has not at this time, however, asserted any facts that demonstrate that any individual at the prison who was aware of Giguere's symptoms actually drew the inference that a failure to properly assess Giguere's symptoms and treat his medical condition created a substantial risk of serious harm to Giguere.

The complaint at this time is therefore insufficient to demonstrate deliberate indifference.  Accordingly, Giguere will be granted leave to amend his complaint to: (1) identify a particular defendant or defendants to this claim; (2) state, with specificity, what facts support the assertion that each identified defendant had an actual awareness of Giguere's

symptoms and the risk they presented to Giguere's health; and (3) state what each identified defendant did or failed to do that resulted in the denial of adequate medical care for Giguere.

III. Inhumane Conditions of Confinement

    A.    Facts

Giguere states that while he was housed in the NHSP's Special Housing Unit ("SHU") in the summer of 2011, Giguere was housed in a cell with no running water for over a week. Giguere states that in that cell, there was dried urine and feces on the floor which created a "horrendous" smell. Giguere alleges that as a result of these cell conditions, and the lack of adequate water, he became sick from dehydration, got dizzy and fell down, and "dry heaved."

Giguere states that four SHU officers placed work orders to have the conditions rectified but nothing was done. Giguere attempted to grieve the conditions in SHU to NHSP Warden Richard Gerry, but his grievance was answered by someone else, and Gerry therefore does not appear to have been made aware of Giguere's complaints.

B. <u>Legal Analysis</u>

"'The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones.'" <u>Leavitt</u>, 645 F.3d at 497 (quoting <u>Farmer</u>, 511 U.S. at 832) (other internal quotations and citations omitted). The Eighth Amendment obligates prison officials to "provide humane conditions of confinement," and to "ensure that inmates receive adequate food, clothing, shelter, and medical care," and requires officials to "take reasonable measures to guarantee the safety of the inmates." <u>Farmer</u>, 511 U.S. at 832 (internal quotations and citations omitted). "[O]nly those deprivations denying the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." <u>Hudson v. McMillian</u>, 503 U.S. 1, 9 (1992) (quoting <u>Wilson v. Seiter</u>, 501 U.S. 294, 298 (1991)).

To state a claim that his Eighth Amendment rights were violated by the conditions of his confinement, Giguere must allege, in addition to grievous conditions, that defendants were deliberately indifferent to a substantial risk to Giguere's health and safety caused by those conditions and failed to take reasonable steps to remedy the offending condition. <u>See</u> <u>Farmer</u>, 511 U.S. at 844; <u>Helling v. McKinney</u>, 509 U.S. 25, 32 (1993).

12

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Farmer, 511 U.S. at 837.

Giguere alleges that he was held in a cell with dried urine and feces on the floor and no running water for over a week. Giguere alleges that as a result he was deprived of sufficient drinking water and became ill from dehydration. Courts have found that subjection to such conditions may violate the Eighth Amendment. See, e.g., Morris v. Ley, 331 F. App'x 417, 420-21 (7th Cir. 2009) (ten days in cell smeared with feces and overpowering smell of human waste); Vinning-El v. Long, 482 F.3d 923, 924 (7th Cir. 2007) (six days in blood- and feces-smeared cell with no bedding or personal property); McBride v. Deer, 240 F.3d 1287, 1291-92 (10th Cir. 2001) (noting that proximity to human waste is a particularly offensive condition of confinement and finding that three days in feces-covered cell was sufficient to state an Eighth Amendment claim); Isby v. Clark, 100 F.3d 502, 505-06 (7th Cir. 1996) (segregation cell with dried blood, feces, urine, and food on the walls); Johnson v. Pelker, 891 F.2d 136, 139 (7th Cir. 1989) (three days in segregation cell

13

smeared with feces and without running water or cleaning supplies). But see, e.g., Taylor v. Larson, No. 2:11-cv-512, 2012 WL 602830, *3 (W.D. Mich. Feb. 23, 2012) (four days in segregation cell with "fresh" feces on the walls not "sufficiently serious" to violate the constitution); Richmond v. Settles, 450 F. App'x 448, 455 (6th Cir. 2011) (six days in segregation cell without, inter alia, hygiene items or running water did not violate Eighth Amendment where plaintiff did not demonstrate the deprivation of any human need).

The court finds that Giguere has alleged conditions depriving him of the "minimal civilized measure of life's necessities" that were "sufficiently serious" to assert the objective component of an Eighth Amendment challenge to Giguere's conditions of confinement. See Farmer, 511 U.S. at 834. Giguere has not yet, however, identified facts to show that any specific defendant had actual subjective awareness of the conditions of Giguere's confinement, and failed to take "reasonable measures" to remedy those conditions. Id. at 833.

Giguere alleges that four unidentified SHU officers placed work orders reporting and seeking repair of the conditions in Giguere's cell. Giguere states, without explanation, that Cpl. Orlando, Cpt. Boyjain, and Sgt. Carrol are the individuals

14

responsible for the unconstitutional conditions in Giguere's cell in SHU.

Giguere has not stated any specific facts that demonstrate that any identified defendant was actually aware of the conditions in Giguere's cell, that those conditions created a substantial risk to Giguere's health and safety if not addressed, and that any identified defendant disregarded that risk in failing to take reasonable steps to remedy the situation. Because Giguere has alleged sufficiently severe conditions of confinement to satisfy the objective prong of an Eighth Amendment claim, the court will allow Giguere to amend his complaint, in an order issued simultaneously with this report and recommendation, to state facts to demonstrate that each identified defendant, or any other individual, was aware of the challenged conditions in Giguere's cell and the risks presented thereby and failed to take reasonable steps to address those conditions.

IV. Supervisory Liability

A. Facts

Giguere names Gerry and New Hampshire Department of Corrections Commissioner William Wrenn as defendants to this action. There are no facts asserted in the complaint indicating

15

that either Gerry or Wrenn had any role in subjecting Giguere to, or was even aware of, any of the alleged constitutional deficiencies in Giguere's medical care or cell conditions.  In fact, the only mention of Gerry in the complaint is Giguere's statement that Gerry did not see a grievance that had been intended for Gerry.  Wrenn is not mentioned at all in the narrative of the complaint.

B.   Legal Analysis

The court presumes that Giguere intended to sue Gerry and Wrenn in their capacities as supervisory officials at the NHSP. Supervisory liability under 42 U.S.C. § 1983 lies only where "an affirmative link between the behavior of a subordinate and the action or inaction of his supervisor exists such that the supervisor's conduct led inexorably to the constitutional violation."  Maldonado v. Fontanes, 568 F.3d 263, 275 (1st Cir. 2009) (internal quotations and citation omitted).  Here, Giguere has not stated any facts to support a claim that either Gerry's or Wrenn's conduct or inaction "led inexorably" to any of the claims asserted in the complaint.  Accordingly, Giguere has failed to state any claim of supervisory liability upon which relief might be granted, and the claims asserted against Gerry and Wrenn should be dismissed.

**Conclusion**

As discussed in this report and recommendation, in an order issued this date, the court grants Giguere leave to amend his complaint to identify specific defendants and to state facts sufficient to state claims upon which relief might be granted. As further explained herein, for the foregoing reasons, the court recommends that Gerry and Wrenn be dismissed from this action.

Any objections to this report and recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). Failure to file objections within the specified time waives the right to appeal the district court's order. See United States v. De Jesús-Viera, 655 F.3d 52, 57 (1st Cir. 2011), cert. denied, 132 S. Ct. 1045 (2012); Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010) (only issues fairly raised by objections to magistrate judge's report are subject to review by district court; issues not preserved by such objection are precluded on appeal).

_____
Landya McCafferty
United States Magistrate Judge

March 21, 2012
cc: Nathan A. Giguere, pro se

LBM:jba